Will contest by Grace Evelyn Vignes against Robert B. Weiskopf and others. From a judgment denying probate of a codicil, proponent appeals.
Affirmed.
The will of Daniel K. Weiskopf, executed March 27, 1947, was admitted to probate, but a codicil executed sixteen days before he died, March 22, 1948, was denied by the county judge for the reasons "among others, that it [was] * * * neither published nor declared [by him] to be his Codicil to his Last Will * * *," there was no evidence that the testator had read it or knew its contents, and it was signed by him during his last illness while he was not "possessed of testamentary capacity."
At the time of the presentation of the codicil for probate an ex parte hearing had been conducted by the county judge, and the order was predicated on the matters there developed. Then, upon a motion to revoke the order, further testimony was taken at a hearing where both appellant and appellees were represented by counsel.
At the conclusion of this second hearing the same judge opined that the testator at the time he consulted his secretary about the codicil and requested his counsel to be summoned, as well as at the time he signed the instrument, lacked testamentary capacity, did not know or understand the contents of the paper. He held the view, too, that the witnesses did not sign in the testator's "conscious presence."
The order was affirmed by the circuit court.
We now turn to the testimony taken on the two occasions, not with a view of weighing it or pitting out judgment against that of the court which heard it, but of determining *Page 85 
whether there was substantial legal evidence to support the findings and whether the judge misapprehended its legal effect. This rule, announced in Re Donnelly's Estate, 137 Fla. 459,188 So. 108, is at least one feature of the controversy on which counsel for the litigants seem to agree.
The testator's secretary, who had been in his service for twenty years, was called by his nurse who told her that Mr. Weiskopf wished to see her. She went to his bedside, where she found him apparently sleeping. He made no response when first she spoke to him, but after an interval, said, "`I want a codicil.' * * * `$100,000 to Mrs. Vignes; you to get $30,000 — ten, ten and ten.'" She continued: "* * * then he stopped. He seemed to be trying to break through * * *." After another pause he said: "`I want to leave $100,000 to somebody, but I can't think who. Isn't that awful?'" Then he kept repeating the question, "`What else?'" She endeavored to assist him by reviewing the contents of his original will with which, because of her position, she was familiar. At the end of this conference she called his attorney, as she had been directed, and "gave him some sketchy notes and remarks." Because of the incomplete nature of the instructions to him, the attorney questioned her "very carefully," and evidently urged her to communicate to him more definite information. She continued: "I went back in the room and tried to get Mr. Weiskopf to be more specific, and more in detail, but he did not say anything further. That is how the codicil got to be written."
The following day the attorney, accompanied by his wife, appeared at the testator's home, bringing with him the codicil which he had undertaken to prepare from the meager information given him by the secretary. The testator did not read it nor was it read to him. At the time, according to one of the witnesses to the codicil, his nurse, it was questionable whether he knew what he was signing. The wife testified that when her husband asked the testator if he desired the instrument read to him he declined and said he would read it later. The lawyer signed it; then at his request his wife and the nurse signed it also. It was immediately sealed and delivered to the secretary, who kept it until after the testator's death; so it is a fair deduction that he never did know exactly what it contained.
It is obvious that the testator was desperately, incurably ill and was in such pain that a great deal of medicine to relieve him of his suffering was being administered, such as phenobarbital, novatrine, demerol, cobra venom, and so forth.
There is ample support in the testimony to form a basis for the county judge's conclusion, and certainly it has not been demonstrated that he misapprehended its legal effect. The testator in the last throes of a deadly disease entertained the thought that he should revise his original will, but there is abundant proof that he had no clear idea, when he had his secretary call his attorney, what he intended to do, and no comprehension of what he had done when he had executed the codicil and ordered it sealed without being acquainted with its contents. There was evidence that he wished to make a bequest of $100,000 to Mrs. Vignes, the appellant; but there was evidence too that he wished to give the same amount to some one whom he could not recollect. It is certain that in a former will executed in 1945 he had devised $75,000 to Mrs. Vignes, then after giving her $50,000 the following year, had provided in the will now probated that she receive but $25,000. This leads to the conclusion that the amount he wished her to receive had been fixed in his mind two years before and confirmed a year later when it was reduced by the amount of the gift. The very reasonable doubt then presents itself whether in his last illness he purposed to raise the bequest to her to $100,000 or confused her name with the name of the person he wished to receive that bequest but whom he could not in his extremity recall.
This is illustrative of the situation as it existed 6 March 1948, and these circumstances, taken with the others we have detailed, such as the administration of narcotics, the hopeless physical condition of the testator, his lethargy, and the affirmative testimony to the effect that he probably did *Page 86 
not comprehend what he was doing or had done, justified the order.
Much has been said in the arguments and written in the briefs about the conduct of the attorney who drafted the codicil and who appears now as counsel for the appellees. The inference is left with us that he was guilty of some duplicity because he prepared the codicil for Daniel Weiskopf and now represents those who would have it declared invalid. We have seen what his activities were with reference to preparing the codicil, bringing it to the sickbed of the testator, and having it acknowledged and witnessed. When it was presented to the county judge for probate he joined the other two witnesses in an oath that they were present when the testator subscribed his name to the instrument; that the testator did not read it; that its contents were not read to him nor made known to him, although the attorney "asked him to read it or have its contents made known to him but the testator replied, `I will read it later'"; that the codicil was immediately sealed; that the seal was not thereafter broken until its deposit with the court; that the attorney received no reply from the testator when he asked him if he wished three subscribing witnesses to attest his execution; that the witnesses thereupon signed the paper at the request of the attorney; "that they verily [believed] that the testator did not know the contents of what he was signing nor did he at the time of the signing thereof have testamentary capacity."
Patently the purpose of this affidavit was to apprise the court at the first opportunity precisely what happened in the sickroom when the codicil was executed.
When the attorney was interrogated about his securing the execution and attestation of the codicil, which he was later to state in the oath had been witnessed without a direct request of the testator, by one who at the time lacked testamentary capacity he gave an answer which seems to us to have been quite sensible. He said simply, "I did the best I knew how."
It occurs to us that he would have been unfaithful to an old client had he not done his best to comply with the request to prepare the codicil and bring it to him. It is true that the information was incomplete, but there is evidence that he tried diligently at the time to have it clarified. When he reached his client's bedside there was good reason to believe, from the atmosphere there, that the client had not long to live and that he was probably not mentally alert, but these circumstances did not make it necessary that the attorney constitute himself a court to pass on the medical and legal question whether he was in fact capable of executing a valid codicil. That the question is debatable is demonstrated by the procedure which has taken its course in the county judge's court, the circuit court, and this court.
We are convinced that the lawyer should have complied as nearly as he could with the testator's request, should have exposed the true situation to the court, which he did, and should have then left the matter to that tribunal to decide whether in view of all facts surrounding the execution of the codicil it should be admitted to probate.
Had the attorney arrogated to himself the power and responsibility of determining the capacity of the testator, decided he was incapacitated, and departed, he would indeed have been subjected to severe criticism when, after the testator's death, it was discovered that because of his presumptuousness the last-minute effort of a dying man to change his will had been thwarted.
The appellant has cited to us law in support of the proposition that testimony of a witness to a will assailing the mental capacity of a testator is viewed with suspicion and given little weight, but there is no need for us to elaborate on that principle because we shall assume that the lower court gave the testimony of these particular witnesses only the weight to which it was, in all the circumstances, entitled, and even if the testimony of this particular class of witnesses be discounted, there appears no need for this court to interfere. We repeat that we are not undertaking to weigh the testimony, but only to determine whether the effect of the whole of it was misapprehended by the court. *Page 87 
As for the hint that the attorney who prepared the codicil acted improperly when he appeared for the appellees in this litigation, we have only to say that his conduct in this regard is utterly beside the points whether the instrument was properly executed and the testator at that time had testamentary capacity.
Affirmed.
ADAMS, C.J., and TERRELL and BARNS, JJ., concur.