(752 P.2d 711)

No. 60,701

SUSAN TRAGER PITTMAN, *Appellant,* v. MCDOWELL, RICE & SMITH, CHARTERED and DONALD E. BUCHER, *Appellees.*

Petition for review denied June 22, 1988.

**604**

Opinion filed March 31, 1988.

*Gerald N. Jeserich,* of Boal and Jeserich, of Kansas City, for the appellant.

*Anthony F. Rupp* and *Steven D. Ruse,* of Shughart, Thomson & Kilroy, P.C., of Overland Park, for appellee McDowell, Rice & Smith, Chartered.

*John L. Peterson,* of Williamson & Cubbison, of Kansas City, for appellee Donald E. Bucher.

Before ABBOTT, C.J., LARSON and RULON, JJ.

LARSON, J.: Susan Trager Pittman appeals the district court's order granting summary judgment to McDowell, Rice & Smith, Chartered, and Donald E. Bucher in a legal malpractice action.

Pittman was divorced from John Trager in 1977. Trager was served by publication and the divorce was granted. Pittman understood by this action she could not have an enforceable child support order for the three children born during their marriage because Trager had not been served personally.

In July 1979, Pittman met with Bucher, an attorney in solo practice, regarding payment of a debt from her marriage to Trager. At that meeting, Bucher and Pittman discussed the possibility of obtaining child support for Pittman.

Following a second meeting several weeks later, Bucher accepted employment to have Pittman's ex-husband served with a motion requesting child support and to obtain a child support order. Bucher felt he was "engaged as her counsel" and intended to charge Pittman a flat fee for his services if she could obtain money from her ex-husband.

In September of 1979, Trager was personally served with a motion requesting child support. In October 1979, Bucher, Trager, and Pittman met in Bucher's office. Trager was afraid the judge would set the child support amount too high, and, after negotiations, agreed to immediately begin paying Pittman $50 a week.

Pittman understood Bucher would file a journal entry setting forth the agreement and arrange for the payments to be made

through the court trustee's office. Bucher remembered discussing the agreement with Pittman, but did not confirm it by letter. The agreement was never journalized nor was the motion ever dismissed.

The first-agreed upon payment was to be made October 26, 1979. Trager did not make this payment to Pittman or to the court trustee. Pittman did receive several payments directly from Trager between October 1979 and August 1981.

Pittman contacted Bucher approximately every other month between November 1979 and August 1981 to find out if Trager could be served with a contempt citation for repeated failure to regularly pay the child support.

In August 1981, Pittman went to the court trustee's office to find out why she was not receiving regular monthly payments. Pittman was told by the trustee's office that no journal entry was on file and she was advised to contact her attorney and ask that the journal entry be sent to the court. Pittman then called Bucher and requested he send the journal entry to the court trustee.

Bucher, who became an employee of the firm of McDowell, Rice & Smith, Chartered, in 1980, recalled that Pittman telephoned him in 1981 and requested a copy of her divorce decree. Bucher informed Pittman he would need to locate the file and requested that Pittman telephone back in several days. When Pittman again telephoned, Bucher had not located the file and suggested Pittman contact the clerk's office and request a copy of the decree from the court. Bucher finally located Pittman's file and, upon her fourth telephone call, explained he had the decree but it did not contain a child support order.

In 1982, Pittman complained about Bucher to the district judge and was referred to J. Paul Maurin, a local attorney. Pittman sought Maurin's assistance in getting Bucher to file the journal entry.

Maurin telephoned Bucher and they agreed Bucher would refile the motion for child support.

Pittman wrote Bucher and stated if he did not take care of the child support matter she would file a complaint with the disciplinary administrator. Bucher wrote in reply that, although he had taken no action on the matter since Maurin's call, he would take care of the child support motion and not charge a fee.

Pittman testified Bucher told her that because he had been unable to locate the file it would be best to serve Trager again.

Pittman stated that Bucher informed her service was accomplished on Trager in late 1982 or January of 1983. Pittman also claimed Bucher told her that Trager would be allowed time to answer so there would be some delay before a court date could be set. Bucher claimed that, after several telephone conversations with Pittman in early 1983, adequate service information was never provided and the second motion was never filed.

Pittman contacted Bucher again in early April 1983 and Bucher told her he would apply for a court date. On May 5, 1983, Pittman telephoned the district court judge to inquire about a court date. The judge checked with the clerk's office and informed Pittman that Trager had not been served a second time.

Pittman continued to telephone Bucher for the next several weeks and, although she had some difficulty reaching him, she was able to make telephone contact. Bucher told her he was attempting to schedule a court date. Pittman's last contact with Bucher was in May 1983.

On May 18, 1983, Pittman telephoned Maurin, who referred her to Geoff Lind, another local attorney, who discussed the option of writing the disciplinary administrator. Pittman wrote the disciplinary administrator in late May 1983, with the "thought [that] they would just write Mr. Bucher and tell him that he had X amount of days to file the journal entry. I thought . . . that would put the fire under him and he would do it."

Bucher testified in his deposition that his representation of Pittman "ended with the grievance; that was the date I was fired."

Pittman did not pursue the civil action during the time the complaint was pending in the disciplinary administrator's office.

On December 5, 1985, Pittman sued Bucher in Wyandotte County District Court, stating a claim for breach of contract of employment. Pittman alleged she contracted with Bucher to "obtain an ongoing child support order," that she suffered a substantial loss of income as a result of Bucher's failure to take the necessary legal steps to obtain the order, and that the contract of employment continued through May 1983.

Pittman also sued the law firm of McDowell, Rice & Smith, Chartered, alleging Bucher acted as its agent in the performance of the employment contract.

At the close of discovery, both defendants filed motions for summary judgment.

Bucher's summary judgment motion alleged Pittman's claim was barred by the two-year statute of limitations, but even if construed as a contractual matter it was barred by a three-year statute of limitations. Bucher further claimed there was no proof Pittman's ex-husband would have paid child support if a journal entry had been filed.

McDowell Rice's motion for summary judgment made the same allegations as Bucher's and, additionally, stated that the law firm was not liable on the alleged contract between Pittman and Bucher because the contract was entered into when Bucher was not an employee of the firm.

After briefs were submitted, the district judge, in sustaining both defendants' motions for summary judgment, found the following:

"1. That the cause of action herein lies in tort subject to the two-year statute of limitation[s], K.S.A. 60-513.

"2. That plaintiff knew or should have known of defendant Bucher's alleged misfeasance by September of 1982 at the latest, in which case the cause of action of tort or contract has expired pursuant to the applicable statute of limitations.

"3. The two other dismissal grounds raised whether Bucher was McDowell's agent and the speculative nature of the damages are factual issues herein which the court cannot rule upon at this time.

"4. The motion of both defendants based upon the expiration of the statute of limitations prior to the filing of this action is sustained. The case is dismissed. Costs are taxed to the plaintiff."

Pittman appeals.

Pittman contends the trial court erred in ordering dismissal for two reasons: (1) Her petition stated a claim for relief based on contract, for breach of which the three-year statute of limitations provided by K.S.A. 60-512(1) would not have run at the time she commenced this action; and (2) the statute of limitations for her claim for relief did not commence to run in September of 1982.

We will consider the latter contention first because if the statute of limitations commenced to run in September of 1982,

Pittman's claim will be time barred under either a contract or a tort theory.

## Cause of action tolled by continuous representation

"In general, a cause of action accrues, so as to start the running of the statute of limitations, as soon as the right to maintain a legal action arises. The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion. *Johnston v. Farmers Alliance Mutual Ins. Co.*, 218 Kan. 543, 548, 545 P.2d 312 (1976); *Yeager v. National Cooperative Refinery Ass'n*, 205 Kan. 504, 470 P.2d 797 (1970).

"Depending upon the facts and circumstances of each case, there are at least four theories which can apply to attorney malpractice in Kansas as to when the accrual of a cause of action occurs and the statute of limitations begins to run. These include:

"(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

"(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

"(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

"(4) *The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated.*

"For cases discussing all four points see Annot., 32 A.L.R.4th 260; ABA/BNA Lawyers' Manual on Professional Conduct § 301:901 (1985); Mallen and Levit, Legal Malpractice § 388 *et seq.* (2d ed. 1981)." (Emphasis added.) *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986).

By its decision in *Pancake House*, Kansas joined a number of courts recognizing the doctrine of "continuous representation" whereby the statute of limitations is tolled during the period the attorney continues to represent the client on the same matter out of which the alleged malpractice arose.

Mallen and Levit's discussion of the rationale for the rule states:

"The premise of the continuous representation rule is to avoid unnecessarily disrupting the attorney-client relationship. Adoption of this rule was a direct reaction to the absurd requirement of the occurrence rule which requires the client to sue his attorney even though the relationship continues and there has not been and may never be any damage. The rule, limited to the context of continuous representation, is consistent with the purpose of the statute of limitations which is to prevent stale claims and enable the defendant to preserve evidence. Where the attorney continues to represent the client in the subject matter in which the error has occurred, all such objectives are achieved and

preserved. The attorney-client relationship is maintained and speculative malpractice litigation is avoided.

"The rule of continuous representation is equally available and appropriate in those jurisdictions adopting the damage and discovery rules. The policy reasons are as compelling for permitting an attorney to continue his efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. The doctrine is fair to all parties concerned. The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to terminate this relationship, although the option exists. This result is consistent with any expressed policy basis for the statute of limitations." Mallen and Levit, Legal Malpractice § 391, pp. 460-61 (2d ed. 1981).

In reviewing the trial court's grant of summary judgment on this issue, this court's scope of review is clear. "When summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party who defended against the motion for summary judgment. [Citations omitted.]" *Richardson v. Northwest Central Pipeline Co.*, 241 Kan. 752, 756, 740 P.2d 1083 (1987). Thus, we view the record in the light most favorable to Pittman.

It is clear Bucher continually represented to Pittman that either he had or would take care of preparation of and filing of the journal entry. After Maurin telephoned Bucher in the fall of 1982, Bucher again agreed to finish the representation. The representation continued in late 1982, or January of 1983, when Bucher informed Pittman he had again served Trager. In the winter of 1983, Bucher told Pittman that Trager would be allowed time to answer so the trial date would be delayed. In April 1983, Bucher told Pittman he would apply for a court date. It was not until May 5, 1983, when Pittman telephoned the district court judge to inquire about a court date, that she was informed Trager had not been served a second time. Bucher's letter of complaint to the disciplinary administrator stated she was still calling Bucher on May 6, 11, and 17, 1983. Bucher admitted in his deposition that his representation of Pittman "ended with the grievance; that was the date I was fired." We hold under these facts the statute of limitations was tolled by Bucher's "continuing representation" until May 31, 1983, the date the disciplinary administrator received Pittman's complaint.

## Statute of Limitations

The second issue in this appeal is the determination of which statute of limitations is applicable. Several states have specific statutes prescribing the period of limitations for legal malpractice actions, but Kansas is among the vast majority which does not. Therefore, the matter is left for determination under statutes deemed by case law to be appropriate to the particular situation.

In order to determine whether Pittman's suit against Bucher is one for breach of contract for which a three-year limitation period applies or, one in tort with a two-year limitation period, we must examine the particular facts herein involved in light of the historical distinction drawn by our Kansas courts.

## Tort Actions

Webb v. Pomeroy, 8 Kan. App. 2d 246, 655 P.2d 465 (1982), was a suit for legal malpractice against two brothers, only one of whom was an attorney. The Court of Appeals affirmed a directed verdict against the lawyer brother but held, as to the nonlawyer brother who prepared conveyance instruments and continually represented his work as adequate and effective to achieve the desired result, when it was not, a directed verdict in his favor was error because the statute of limitations (K.S.A. 60-513[b]) did not begin to run until injury resulted from the decision in an underlying lawsuit. The tort-contract distinction was not the central issue. Nevertheless, after determining that the nonlawyer brother's assurances concerning the validity of a repurchase agreement constituted fraudulent concealment, the court held the period of limitations did not commence to run until the fact of injury became reasonably ascertainable to the injured party. 8 Kan. App. 2d at 251.

In *Bowman v. Doherty*, 235 Kan. 870, 686 P.2d 112 (1984), Doherty's handling of Bowman's worthless check prosecution resulted in Bowman's arrest for aggravated failure to appear and precipitated Bowman to sue Doherty alleging negligent action. After a jury trial based on comparative negligence, Bowman recovered $50 actual damages and $900 in punitive damages.

Doherty claimed Bowman was not entitled to punitive damages because his claim sounded in contract. To this the court held:

"Legal and medical malpractice generally constitute both a tort and a breach of

·contract. An action for liability of an attorney on the grounds of negligence for failure to discharge his professional duty to a client rests on the employment contract and therefore is contractual in nature. Where the act complained of is a breach of specific terms of the contract without any reference to the legal duties imposed by law upon the relationship created thereby, the action is contractual. Where the gravamen of the action is a breach of a duty imposed by law upon the relationship of attorney/client and not of the contract itself, the action is in tort." *Bowman v. Doherty*, 235 Kan. at 879.

In *Chavez, Executrix, v. Saums*, 1 Kan. App. 2d 564, 571 P.2d 62, *rev. denied* 225 Kan. 843 (1977), the plaintiff employed Saums to represent him in the sale of some stock. After the sales agreement was signed, plaintiff refused to honor the sale, refunded the purchase price, and discharged Saums as his attorney. The buyer decided to enforce the contract, returned the check to the plaintiff, and employed Saums, who sued his former client and successfully enforced the contract.

Plaintiff then sued Saums, who prevailed on a statute of limitations defense. The claim was considered to be a breach of a legal duty arising out of the circumstances surrounding the attendant transaction, which was a tort.

*Chavez* was deemed to be controlled by *Malone v. University of Kansas Medical Center*, 220 Kan. 371, 552 P.2d 885 (1976). In that case, the court said:

"A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement. A tort, on the other hand, is a violation of a duty imposed by law, a wrong independent of contract. Torts can, of course, be committed by parties to a contract. The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." 220 Kan. at 374.

## Contract Actions

The distinction as to whether the action sounded in tort or contract was critical in *Price, Administrator v. Holmes*, 198 Kan. 100, 422 P.2d 976 (1967). There, plaintiff's decedent died while a will under which she was a beneficiary was being contested. If her claim was in tort, it failed to survive her death, but if in contract it survived.

In *Price*, a layman scrivener of a will was sued for the faulty execution and attestation of his work. His motion for summary judgment was sustained on the ground, among others, that the

statute of limitations barred Price's cause of action. The Kansas Supreme Court reversed, holding that plaintiff's petition alleged alternative causes of action—one in contract for breach of implied warranty and a second in tort for negligent handling of the execution of the will. It was further held the cause of action in contract was not barred by the three-year statute of limitations applicable to an action for breach of implied warranty because the statute was tolled during the period of the underlying will contest.

In *Juhnke v. Hess*, 211 Kan. 438, 506 P.2d 1142 (1973), Juhnke sued Hess for failure to file a timely appeal on his behalf in a condemnation proceeding. The court said this was a breach of a specific contract—failure to do that which the attorney expressly agreed to perform. The real basis for the claim for relief was financial loss resulting from failure to discharge a contractual obligation and consequently the claim for relief was one founded on an unwritten contract to be governed by the three-year statute of limitations provided in K.S.A. 60-512(1).

Cases from other jurisdictions which have considered this identical problem are not in harmony but may be found in Annot., Attorney Malpractice—Limitations, 2 A.L.R.4th 284.

*Pancake House* states the basis upon which we must decide between contract and tort:

"[W]here a legal duty is imposed by law, the cause of action is in tort. Where the malpractice involves failure to perform a contractual obligation, whether express or implied, the cause of action is in contract." 239 Kan. at 86.

Another way this same problem has been stated is the earlier quoted wording of *Malone*:

"The question to be determined here is whether the actions or omissions complained of constitute a violation of duties imposed by law, or of duties arising by virtue of the alleged express agreement between the parties." 220 Kan. at 374.

It is therefore necessary to consider the underlying basic agreement of employment of Bucher by Pittman.

Bucher was employed to file a motion for child support, obtain service on Trager, and obtain a child support order.

Bucher partially performed on his agreement by filing the motion and by obtaining proper service. He followed up by assisting the parties in reaching an agreement whereby Trager

agreed to pay Pittman $50 per week for support of their three children. *The only thing Bucher failed to do was to prepare and file a journal entry* which would have completed his express agreement for services to Pittman.

We hold Bucher has failed to perform a duty arising under or imposed by agreement, which is in contract and allows a three-year period of limitations under K.S.A. 60-512(1).

While the attorney in *Juhnke* neglected to perform the initial duty in his contractual representation (failure to file a notice of appeal), Bucher neglected to perform the final duty in his contractual representation (failure to file a journal entry setting forth an agreed child support order).

We believe the trial court's reliance, in its memorandum opinion, on *Werner v. Kliewer,* 238 Kan. 289, 710 P.2d 1250 (1985), is misplaced. *Werner* cited the specific language of *Malone* which we have quoted herein. In applying that language to the facts of the instant case, we hold that Bucher breached a duty arising from an express agreement of the parties.

Having determined the three-year contract statute of limitations applies and that K.S.A. 60-512(1) was tolled by Bucher's "continuing representation" until May 31, 1983, we hold the action was timely filed. We have considered but decline to apply "equitable estoppel" to the facts herein nor do we need to do so in light of our ruling.

We further decline to uphold the granting of summary judgment because appellees claim Pittman's damages are vague and speculative. The trial court properly refused to rule on this issue as it did on the issue of whether Bucher was McDowell Rice's agent.

Reversed and remanded for further action consistent with this opinion.