**TURNER AND BOISSEAU,
CHARTERED,
Plaintiff,**

v.

**NATIONWIDE MUTUAL INSURANCE
COMPANY, Defendant.**

**Civil Action No. 95–1258–DES.**

United States District Court,
D. Kansas.

Dec. 1, 1997.

Daniel G. Menzie, Turner & Boisseau, Chartered, Peter G. Collins, Wallace, Saunders, Austin, Brown & Enochs, Chartered, Wichita, KS, Hal D. Meltzer, Turner & Boisseau, Chartered, Overland Park, KS, for Turner and Boisseau, Inc., Plaintiffs.

Lee M. Smithyman, David J. Roberts, Smithyman & Zakoura, Chtd., Overland Park, KS, for Nationwide Mutual Insurance Company, Defendants.

### *MEMORANDUM AND ORDER*

SAFFELS, Senior District Judge.

This matter is before the court on plaintiff's Motion for Partial Summary Judgment (Doc. 135) on the defendant's Amended Counterclaim (Doc. 116).

## I. BACKGROUND

In December 1988, the defendant, Nationwide Mutual Insurance Company ("Nationwide"), employed the plaintiff, Turner & Boisseau, Chartered ("Turner & Boisseau"), to represent the defendant's insured in *Murphy v. Smock*, a case filed in the District Court of Finney County, Kansas. The case was tried to a jury on July 17, 1992, but was settled prior to the conclusion of trial.

Turner & Boisseau filed suit in Barton County District Court on May 2, 1995, alleging that Nationwide owed the plaintiff $54,280.19 for attorney's fees, expert's fees, and other costs incurred in defending *Murphy v. Smock* between March 17, 1992, and December 8, 1992. The defendant removed the action to federal court on May 23, 1995. On October 12, 1995, the defendant filed a counterclaim against the plaintiff, seeking in excess of $72,446.27 for fees and costs paid to the plaintiff prior to March 17, 1992. Nationwide claims that Turner & Boisseau breached its contract to provide the defendant with proper legal services and representation. The defendant alleges that the plaintiff, among other things, billed the defendant for fees and expenses that were substantially greater than necessary, provided inexperienced counsel at trial, and failed to provide appropriate legal advice.

On November 7, 1995, the plaintiff filed a motion to dismiss the defendant's counterclaim for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). The plaintiff's motion to dismiss the defendant's counterclaim was denied by this court on Febru-

ary 12, 1996. The defendant then filed an amended counterclaim in this matter on September 3, 1996. Plaintiff filed the present motion for partial summary judgment as to Count I of the amended counterclaim on March 19, 1997.

## II.  SUMMARY JUDGMENT STANDARD

A court shall render summary judgment upon a showing that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The rule provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The substantive law identifies which facts are material. *Id.* at 248. A dispute over a material fact is genuine when the evidence is such that a reasonable jury could find for the nonmovant. *Id.* "Only disputes over facts that might properly affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The movant has the initial burden of showing the absence of a genuine issue of material fact. *Shapolia v. Los Alamos Nat'l Lab.*, 992 F.2d 1033, 1036 (10th Cir.1993). The movant may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1985). The movant need not negate the nonmovant's claim. *Id.* at 323.

Once the movant makes a properly supported motion, the nonmovant must do more than merely show there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The nonmovant must go beyond the pleadings and, by affidavits or depositions, answers to interrogatories, and admissions on file, designate specific facts showing there is a genuine issue for trial. *Celotex*, 477 U.S. at 324 (interpreting Fed.R.Civ.P. 56(e)).

Rule 56(c) requires the court to enter summary judgment against a nonmovant who fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof. *Id.* at 322. Such a complete failure of proof on an essential element of the nonmovant's case renders all other facts immaterial. *Id.* at 323.

A court must view the facts in the light most favorable to the nonmovant and allow the nonmovant the benefit of all reasonable inferences to be drawn from the evidence. *See, e.g., United States v. O'Block*, 788 F.2d 1433, 1435 (10th Cir.1986) (stating that "[t]he court must consider factual inferences tending to show triable issues in the light most favorable to the existence of those issues"). The court's function is not to weigh the evidence, but merely to determine whether there is sufficient evidence favoring the nonmovant for a finder of fact to return a verdict in that party's favor. *Anderson*, 477 U.S. at 249. Essentially, the court performs the threshold inquiry of determining whether a trial is necessary. *Id.* at 250.

## III.  DISCUSSION

### A.  Contract vs.  Tort

Plaintiff seeks summary judgment on Count I of Nationwide's amended counterclaim. Plaintiff argues that Count I sounds in tort, rather than contract. Therefore, plaintiff argues that the two-year statute of limitations applies, rather than the three-year statute of limitations for oral and implied contracts. This argument was previously raised in plaintiff's motion to dismiss the original counterclaim, which is identical to Count I of the amended counterclaim. In ruling on the motion to dismiss, this court held that "Nationwide has sufficiently pled the existence of specific contractual duties on the part of Turner & Boisseau so as to state a claim for breach of contract." Mem. & Order dated February 12, 1996, at 7. This court further held that the three-year statute of limitations contained in section 60–512 of the Kansas Statutes Annotated would apply. *Id.* at 10.

██ As this court stated in the prior Memorandum and Order, legal malpractice generally constitutes both a tort and a breach of contract. *Pizel v. Zuspann*, 247 Kan. 54, 795 P.2d 42, 54 (1990). "Where the [legal] malpractice involves failure to perform a contractual obligation, whether **express or implied**, the cause of action is in contract." *Pittman v. McDowell, Rice & Smith, Chartered*, 12 Kan.App.2d 603, 752 P.2d 711, 718 (1988) (quoting *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 716 P.2d 575, 578 (1986)) (emphasis added). Furthermore, the Kansas Supreme Court has stated that "where doubt exists as to whether an action is based on tort or implied contract ... words appropriate to a tort action will be disregarded and the petition interpreted as sounding in contract." *Mackey–Woodard, Inc. v. Citizens State Bank*, 197 Kan. 536, 419 P.2d 847, 856 (1966). *See* Mem. & Order dated February 12, 1996, for a full analysis of the Kansas case law discussing the application of the statute of limitations for legal malpractice.

██ Although many of the allegations contained in Count I of Nationwide's amended counterclaim could be interpreted as a violation of a duty imposed by law, the court finds that the nature of the allegations are such that they could also be interpreted as a breach of an express or implied agreement. Nationwide has specifically alleged and brought forth evidence of the following agreements regarding Turner & Boisseau's legal representation: (1) an express agreement that Turner & Boisseau would provide legal representation at a lower cost than other firms through the use of computers, paralegals, and efficient internal procedures; (2) an express agreement that Lee Turner would handle and try the *Murphy v. Smock* case; (3) an express agreement that Nationwide would only pay for one trial attorney; (4) an implied agreement that Nationwide would only pay reasonable fees; and (5) an implied agreement that Turner & Boisseau would provide appropriate and reliable legal advice, guidance, and representation concerning all aspects of the *Murphy v. Smock* litigation. Therefore, the court finds that Nationwide has presented sufficient evidence to support a prima facie case for breach of contract subject to the three-year statute of limitations. *See* KAN. STAT. ANN. § 60–512 (1994).

## B. Accrual

██ Plaintiff further argues that, even if the court finds that the three-year statute of limitations for oral and implied contracts applies, Nationwide's cause of action accrued prior to October 12, 1992. Thus, plaintiff asserts that the three-year statute of limitations had expired before Nationwide filed its original counterclaim, which is identical to Count I of the amended counterclaim, on October 12, 1995. Specifically, plaintiff alleges that Nationwide's cause of action would have accrued in July of 1992, when the *Murphy v. Smock* litigation settled. Alternatively, plaintiff alleges that the latest date for accrual of this cause of action was August 20, 1992, when Nationwide's claims attorney informed Turner & Boisseau that Nationwide would not pay any more of their invoices and that Nationwide wanted arbitration of all the bills from the beginning of Turner & Boisseau's representation. However, Nationwide argues that the continuous representation rule should be applied to this case, which would make the filing of its counterclaim timely.

██ Under the continuous representation rule, "the client's cause of action does not accrue until the attorney-client relationship is terminated." *Pancake House, Inc.*, 239 Kan. 83, 716 P.2d 575, 579 (1986). Thus, "the statute of limitations is tolled during the period the attorney continues to represent the client on the same matter out of which the alleged malpractice arose." *Pittman*, 752 P.2d at 715. In *Pittman*, the Kansas Court of Appeals stated that the rationale behind the continuous representation rule "is to avoid unnecessarily disrupting the attorney-client relationship." *Id.* Furthermore, the *Pittman* court stated that the continuous representation rule is consistent with the underlying policy for the statute of limitations. *Id.*

In this case, Nationwide has submitted letters from Turner & Boisseau, as well as billing statements, which demonstrate that Turner & Boisseau did not mail Ben Murphy's release of all claims to Nationwide until

at least October 15, 1992. However, Turner & Boisseau contend that the representation ended on August 20, 1992, because the relationship became adversarial and that Turner & Boisseau performed "mere scrivener work to complete the closing documents." Pl.'s Reply at 16.

The court is unpersuaded by Turner & Boisseau's argument. In Turner & Boisseau's letter to Gail Lewis of Nationwide dated September 29, 1992, David Steed of Turner & Boisseau stated that "plaintiff counsel has indicated he will file a Motion to Set Aside the settlement if the settlement monies are not promptly received.... As we discussed, it is my thinking that if Judge Handy were to set aside the settlement, **such would permit us to proceed to trial.**" Def.'s Mem. in Opp'n Ex. C (emphasis added). This statement does not indicate to the court that Turner & Boisseau had terminated their representation of Nationwide by the time of this letter, dated more than a month after Turner & Boisseau claims to have developed an adversarial relationship with Nationwide. Furthermore, the court notes that neither party has presented any evidence which clearly demonstrates when Turner & Boisseau's legal representation terminated. Therefore, the court finds that Turner & Boisseau continued to represent Nationwide on the same matter, namely the *Murphy v. Smock* litigation, at least until October 15, 1992, the date that Turner & Boisseau wrote the letter which was sent with the original release to Nationwide. Pursuant to the continuous representation rule, the court finds that Nationwide's counterclaim was timely filed on October 12, 1995. As a result, the court does not reach Nationwide's argument that the counterclaim should be deemed to have been filed, for statute of limitations purposes, on the date the motion for leave to file the counterclaim was filed.

## C. Accord and Satisfaction; Waiver and Estoppel

Turner & Boisseau argue that Nationwide cannot include the first invoice which was reduced by John White of Nationwide because that claim is barred by accord and satisfaction. Turner & Boisseau further argue that waiver and estoppel should be applied to prevent Nationwide from seeking any of the money paid on the subsequent invoices because Nationwide knew that it could ask for a reduction and chose not to do so.

In order to show that there was an accord and satisfaction,

> there must be an offer in full satisfaction of an obligation, accompanied by such acts and declarations or made under such circumstances that the party to whom the offer is made is bound to understand that if he accepts the offer, it is in full satisfaction of and discharges the original obligation. An accord and satisfaction, as an adjustment of a disagreement as to what is due from one party to another through payment of an agreed amount, must be consummated by a meeting of the minds and accompanied by sufficient consideration.

*E.F. Hutton & Co. v. Heim,* 236 Kan. 603, 694 P.2d 445, 451 (1985) (citations omitted).

■ In this case, Nationwide has presented evidence which indicates that the plaintiff and Nationwide had not agreed upon an amount by which the invoice would be reduced. Rather, Turner & Boisseau offered a reduction of $225, and Nationwide unilaterally reduced the bill by an additional $360. The court is unable to find that there was a "meeting of the minds," as is necessary to show that there was an accord and satisfaction. Therefore, the court finds that Nationwide has shown that there is a genuine issue of material fact on this issue.

■ "Waiver in contract law implies that a party has voluntarily and intentionally renounced or given up a known right, or has caused or done some positive act or positive inaction which is inconsistent with the contractual right." *Iola State Bank v. Biggs,* 233 Kan. 450, 662 P.2d 563, 571 (1983). " 'The intent to waive known rights is essential.' 'A court should be cautious in granting a motion for summary judgment when resolution of the dispositive issue necessitates a determination of the state of mind of one or both of the parties.' " *Zenda Grain & Supply Co. v. Farmland Industries, Inc.,* 20

Kan.App.2d 728, 894 P.2d 881, 894 (1995). Furthermore, the Kansas Court of Appeals has stated that waiver and estoppel "conflict[] with the intent of the continuous representation rule, which encourages the client to work with the fiduciary in attempting to rectify the situation or to mitigate damages." *Morrison v. Watkins,* 20 Kan.App.2d 411, 889 P.2d 140, 151 (1995).

In this case, Nationwide has presented evidence which indicates that it did not have the requisite intent to waive its claims against Turner & Boisseau on subsequent invoices. Furthermore, Nationwide has presented evidence that it did not terminate Turner & Boisseau's representation in order to avoid rebilling. As stated above, such action is consistent with the rationale for the continuous representation rule. Therefore, the court finds that Nationwide has demonstrated that there is a genuine issue of material fact with respect to this issue.

**IT IS THEREFORE BY THE COURT ORDERED** that the plaintiff's Motion for Partial Summary Judgment (Doc. 135) is denied.