(889 P.2d 140)
No. 70,580

DOROTHY M. MORRISON, *Plaintiff/Appellant*, v. L. EARL WATKINS, JR.; WATKINS, CALCARA, RONDEAU & FRIEDMAN, P.A., a Kansas professional corporation; JAMES F. ADAMS; and ADAMS, BROWN, BERAN & BALL, CHARTERED, a Kansas professional corporation; *Defendants/Third-party Plaintiffs/Appellees*, v. DOROTHY M. MORRISON, in her capacity as trustee, *Third-party Defendant/Appellant*, and CLAYTON S. MORRISON and SALLY M. SCHEIDEMAN, now deceased, *Intervenors*.

412

Opinion filed January 27, 1995.

*John Terry Moore*, of Hinkle, Eberhart & Elkouri, L.L.C., of Wichita, for appellant.

*Clarence L. King, Jr.*, and *John A. O'Leary*, of Hampton, Royce, Engleman & Nelson, L.C., of Salina, for appellees L. Earl Watkins, Jr., *et al.*

*Robert G. Martin* and *Susan G. Saidian*, of McDonald, Tinker, Skaer, Quinn & Herrington, P.A., of Wichita, for appellees James F. Adams, *et al.*

Before Brazil, P.J., Gernon, J., and C. Fred Lorentz, District Judge, assigned.

Brazil, J: Dorothy Morrison appeals from the district court's award of summary judgment in favor of L. Earl Watkins, Jr.; Watkins, Calcara, Rondeau & Friedman, P.A.; James F. Adams; and Adams, Brown, Beran & Ball, Chartered, former trustees of the Morrison Trust. Morrison argues that the district court erred in finding that the statute of limitations had run on her claims.

L. Earl Watkins, Jr., *et al.*, cross-appeal, arguing that the district court erred in not awarding them attorney fees from the trust corpus.

We affirm in part, reverse in part, and remand for further proceedings.

The Dorothy M. Morrison Revocable Trust No. 1 (Trust) was established in December 1979. At the time of creation, Dorothy M. Morrison was the grantor, a beneficiary, and a co-trustee of the Trust, and James Adams and L. Earl Watkins, Jr., were named co-trustees. Watkins was a partner in the law firm that drew up the Trust, and Adams was a C.P.A. who had done accounting work for the Morrison family in the past. At the time the Trust was created, Morrison was 67 years old and had a net worth in excess of $4 million.

Watkins advised Morrison that one advantage of the Trust was that she would not have to participate in the day-to-day management of her assets. On May 30, 1980, the Trust was amended to authorize any two of the three trustees to exercise all the powers of the Trust without the signature of the third trustee.

The main controversy in this case centers around several investments made by the Trust between 1979 and 1986. Soon after the formation of the Trust, the Trust entered into an agreement with Flexweight Corporation. Flexweight already owned an oil drilling equipment manufacturing facility and an office building on land which it leased from the Trust. This land came into the Trust through inheritance.

Under the agreement, the Trust participated with the City of Great Bend in an industrial revenue bond issue. The bonds were purchased by a local bank, and the Trust used the bond proceeds to build a new manufacturing facility on the property which the Trust then leased to Flexweight. Unfortunately, Flexweight later filed for bankruptcy, and the Trust was forced to make debt service payments while the building stood empty.

On October 18, 1979, before the creation of the Trust, a lot on South McKinley Street in Great Bend was purchased for Morrison. This lot was subsequently included in the Trust.

From 1979 to 1986, the Trust invested in oil and gas working interests. These working interests were not profitable, and in 1983, oil prices declined. Nevertheless, the Trust continued to invest in working interests, investing $246,729 in 1984 and $164,399 in 1985.

In 1983, the Trust invested in the newly formed Grady Bolding Oil Corporation in order to "spread the risk" from on-site investments to corporate investments.

Also in 1983, the Trust purchased a 5% interest in Mohawk Drilling Company for $120,000. Mohawk took bankruptcy in 1988.

The Trust also invested in Crossroads, a general partnership which owned two apartment buildings in Great Bend. The other five general partners in Crossroads included Watkins and Watkins' brother-in-law, as well as Morrison's son, Clayton. All of the partners were clients of appellee Adams' accounting firm.

Finally, the Trust purchased Parsons Roofing Company, intending to sell the company back over time to one of the company's employees, Brian Harris. Harris had been unable to obtain conventional bank financing and so discussed his idea for buying the company with Clayton Morrison. Clayton presented the idea to Adams and Watkins.

The total price of Parsons Roofing Company was $300,000. The Trust invested $200,000, and Harris invested $50,000. The Trust also loaned Harris and Bob Simmons, another employee, $50,000 so that they could also purchase part of the company. Unfortunately, Harris and Simmons were unable to repay the loan, and

the Trust bought them out, taking their shares in Parsons as re-payment and further paying Harris $34,931 for the shares he had purchased with his own money. In order to purchase Parsons, the Trust was forced to borrow $259,000, which it later repaid with approximately $50,000 in interest.

There is a question as to how much Morrison knew about her financial state of affairs. According to Watkins and Adams, Morrison was provided with financial statements every six months, and she would review them. Watkins and Adams assert that Morrison was aware of all the investments, except the Crossroads investment, either before or soon after they were made.

Morrison, on the other hand, claims that while she received financial statements twice yearly, they were hard to understand and Watkins and Adams did not review them with her. Furthermore, Morrison stated that she did not learn of the complained of investments until after the fact.

In 1986, Morrison entered into a lawyer-client relationship with Henry McFadyen, a lawyer in Dallas. On February 24, 1987, Morrison and McFadyen had a meeting in which the Trust was discussed. Morrison and McFadyen discussed the possibility of replacing Adams and Watkins as trustees and discussed the possibility of adopting a new investment philosophy for the Trust.

McFadyen requested a meeting with Morrison, Watkins, and Adams in which he planned to discuss, among other things, the trust investments. Following the meeting, McFadyen recommended to Morrison that Watkins and Adams be discharged as trustees. On April 11, 1987, Morrison told him that she did not want to replace Watkins and Adams as trustees because she depended on them for help in many ways and would miss their good will. McFadyen continued to investigate the possibility of obtaining a corporate trustee for the Trust.

In the fall of 1987, Morrison discharged Adams as trustee and replaced him with her son, Clayton. She also wrote a letter directing the trustees to sell the complained-of investments and invest in more standard investments. Watkins continued to be a trustee, and in 1990, Morrison discharged McFadyen, indicating that she was satisfied with the management of the Trust.

In June 1990, Morrison terminated the Trust. On October 18, 1991, Morrison filed a petition against Watkins, Adams, and their firms (hereinafter referred to simply as Watkins and Adams), alleging that Watkins and Adams had breached their fiduciary duties by carelessly and negligently handling trust assets and making investments in bad faith and making investments in which they had a conflict of interest.

All parties filed motions for summary judgment. For reasons hereafter discussed, the district court awarded summary judgment in favor of Watkins and Adams. Watkins and Adams then filed motions for unpaid fees and expenses which were denied.

Morrison first argues that the district court erred in awarding summary judgment in favor of Watkins. Morrison claims that the continuous representation rule should operate to toll the running of the statute of limitations until Watkins was dismissed from his position of trustee by the revocation of the Trust.

This court's standard of review for a district court's award of summary judgment has been often stated. Summary judgment is proper when the pleadings, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law. When a summary judgment is challenged on appeal, an appellate court must read the record in the light most favorable to the party defending against the motion. *Patterson v. Brouhard*, 246 Kan. 700, 702-03, 792 P.2d 983 (1990). To defeat a properly supported motion for summary judgment, the non-moving party must come forward with specific facts showing a genuine issue for trial. *Mark Twain Kansas City Bank v. Kroh Bros. Dev. Co.*, 250 Kan. 754, 762, 863 P.2d 355 (1992).

The district court held that Morrison's claims against Watkins were barred by the two-year statute of limitations found in K.S.A. 1993 Supp. 60-513(a). Morrison, however, argues that the continuous representation rule should be applied to her dealings with Watkins, and that this rule should toll the running of the statute of limitations.

The continuous representation rule applies to fix the time when the accrual of a cause of action occurs and the statute of limi-

tations begins to run and is generally applied to attorney malpractice. *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986). Under the continuous representation rule, the client's cause of action does not accrue until the attorney-client relationship is terminated. 239 Kan. at 87.

In *Pittman v. McDowell, Rice & Smith, Chtd.*, 12 Kan. App. 2d 603, 609, 752 P.2d 711, *rev. denied* 243 Kan. 780 (1988), this court applied the continuous representation rule to a situation where an attorney failed to file a journal entry but continued to represent to his client that he would take care of the matter. This court held that the continuous representation rule tolled the statute of limitations until the attorney was fired by the client. In analyzing the reason for the continuous representation rule, the court quoted Mallen and Levit, Legal Malpractice § 391, pp. 460-61 (2d ed. 1981):

" 'The premise of the continuous representation rule is to avoid unnecessarily disrupting the attorney-client relationship. Adoption of this rule was a direct reaction to the absurd requirement of the occurrence rule which requires the client to sue his attorney even though the relationship continues and there has not been and may never be any damage. The rule, limited to the context of continuous representation, is consistent with the purpose of the statute of limitations which is to prevent stale claims and enable the defendant to preserve evidence. Where the attorney continues to represent the client in the subject matter in which the error has occurred, all such objectives are achieved and preserved. The attorney-client relationship is maintained and speculative malpractice litigation is avoided.

" 'The rule of continuous representation is equally available and appropriate in those jurisdictions adopting the damage and discovery rules. The policy reasons are as compelling for permitting an attorney to continue his efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. The doctrine is fair to all parties concerned. The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to terminate this relationship, although the option exists. This result is consistent with any expressed policy basis for the statute of limitations.' " 12 Kan. App. 2d at 608-09.

Morrison argues that Watkins served as an attorney both for her personally and for the Trust until 1990. She contends, therefore, that it was Watkins' duty to keep her informed of her causes

of action against Adams and himself for mismanagement of the Trust. According to Morrison, Watkins continually breached this duty until the date of the termination of his employment with the Trust.

Morrison's case does not fit neatly within the framework of the continuous representation doctrine, which usually contemplates an attorney-client relationship on one particular matter rather than an ongoing relationship where the attorney is a trustee. However, the continuous representation doctrine has been employed in an attorney as trustee relationship. In *Greene v. Greene*, 56 N.Y.2d 85, 94, 451 N.Y.S.2d 46, 436 N.E.2d 496 (1982), the court stated that a client who entrusts his assets to an attorney for professional assistance faces the same dilemma as the client who entrusts his case to an attorney for litigation. In neither instance can the client be expected to supervise the attorney's handling of the matter, and therefore the right of action is not accrued before the attorney-client relationship is terminated. 56 N.Y.2d at 94-95.

At least one court has held that the continuous representation rule is not applicable when the client learns of the attorney's negligence before the termination of the relationship. See *Economy Housing Co. v. Rosenberg*, 239 Neb. 267, 269, 475 N.W.2d 899 (1991). However, this runs counter to the rationale for the rule cited in *Pittman*, which allows the client to work with the attorney to correct the error even though the client knows the error exists. See *Pittman*, 12 Kan. App. 2d at 609.

Applying the rationale of the continuous representation rule as stated in *Pittman* to the case before us, it would be irrational to require Morrison to file suit against the trustees for every investment as soon as she learned about it. Instead, Morrison should rightly be able to work with the other trustees in an attempt to recoup her losses and set straight the trust management. Construing the facts in the light most favorable to Morrison, Watkins remained as trustee and attorney for both Morrison and the Trust until 1990. Therefore, under the continuous representation rule, the statute of limitations would not apply. The question that remains to be answered is whether Morrison's hiring of McFadyen in 1987 interrupted the continuous representation rule. The dis-

trict court found that the hiring of McFadyen interrupted the rule because McFadyen advised Morrison of any claims she would have against Watkins and Adams and advised Morrison to fire Watkins and Adams.

Morrison first argues that the district court improperly predicated its judgment on a disputed issue of material fact. Morrison argues that McFadyen never advised her to fire Watkins and Adams, but instead merely suggested the addition of another trustee. Unfortunately, Morrison ignores her admission, in her response to Watkins' motion for summary judgment, that McFadyen advised her to fire Watkins and Adams. Therefore, no disputed issue of fact existed on this point.

Watkins argues that when Morrison established an attorney-client relationship with McFadyen and had him look over the Trust's investments, the continuous representation rule was terminated. In support of this contention, Watkins cites *Cantu v. St. Paul Cos.*, 401 Mass. 53, 58, 514 N.E.2d 666 (1987). In *Cantu*, the court held that where the client retained a second attorney to advise him of legal options he might have as the result of his first attorney's malpractice, the "innocent reliance" on which the continuous representation doctrine is based was not present, and the doctrine was not applicable. 401 Mass. at 58. Also, in *Lazzaro v. Kelly*, 87 App. Div. 2d 975, 976, 450 N.Y.S.2d 102 (1982), the court held that where the plaintiff hired another attorney to file a malpractice suit against his first attorney, the continuous representation rule did not apply because the trust and confidence on which the rule is based had come to an end, notwithstanding the fact that the first attorney continued to work for the plaintiff as an escrow agent.

However, in *Bass & Ullman v. Chanes*, 185 App. Div. 2d 750, 586 N.Y.S.2d 610 (1992), the court ruled that where a law firm continued to represent a plaintiff on related matters and worked to help correct the problems caused by its malpractice, the continuing representation rule applied, although the plaintiff hired independent counsel to represent her in the criminal case caused by the law firm's negligence.

In Morrison's case, she established an attorney-client relationship with McFadyen, and after he reviewed her investments, he

advised her to fire Watkins and Adams as trustees. This activity would tend to show the loss of faith which would terminate the continuous representation rule. However, Morrison decided not to fire Watkins and Adams and continued to rely upon them as trustees. McFadyen continued to work with the trustees and advise them concerning investments until he himself was fired. This activity shows that Morrison continued to rely on Watkins and Adams.

Morrison contends that because Watkins and Adams continued in their positions as trustees and worked with McFadyen, the continuous representation rule still applies. She cites *Lima v. Schmidt*, 595 So. 2d 624, 630 (La. 1992), and *Bass & Ullman*, 185 App. Div. 2d 750, for this proposition. However, both *Lima* and *Bass & Ullman* are distinguishable from the case at hand.

In *Lima*, the court held that the hiring of a new attorney did not terminate the continuous representation rule. However, the new attorney was retained by the law firm, and was hired merely to represent the plaintiff in litigation caused by the law firm's negligence. However, when the plaintiff hired independent counsel of her own to instigate suit against the law firm, the continuous representation ended. 595 So. 2d at 630. Likewise, in *Bass & Ullman* the new attorney was hired by the plaintiff in order to handle the criminal case arising as a result of the law firm's negligence. The new attorney was not hired to instigate suit against or investigate the dealings of the law firm. 185 App. Div. 2d at 750.

A synthesis of cases dealing with the continuous representation rule reveals that its purpose is to benefit both the client and attorney by allowing the attorney to attempt to correct or mitigate damages caused by the attorney's error and allowing the client to refrain from discharging the attorney upon discovery of the error. *Pittman*, 12 Kan. App. 2d at 609. A client is entitled to rely on the attorney and need not hire another attorney to continually check up on her first attorney's every action. See *Greene*, 56 N.Y.2d at 94-95. Where the client does hire another attorney, and assumes an adversarial stance to her first attorney, the continuous representation terminates, even if the client does not formally fire the first attorney. See *Cantu*, 401 Mass. at 58.

In this case, Morrison was not obliged to hire counsel to look at the investments made by Watkins and Adams. She decided to do so, however, and was advised by her independent counsel that she should fire Watkins and Adams. However, she chose not to do this and attempted to work with them to mitigate damages and correct their mistakes. Because she never actually assumed an adversarial stance against Watkins and Adams, the continuous representation rule applies and Morrison's cause of action accrues from the time that she dismissed Watkins and Adams. Therefore, the district court erred in determining that the statute of limitations barred Morrison's claims against Watkins.

Although the continuous representation rule applies to toll the statute of limitations, there is still a question of whether Morrison's claims against Adams are barred by the statute of limitations. The undisputed evidence shows that Morrison discharged Adams from his position of trustee in 1987. Therefore, it would appear that the statute of limitations would bar Morrison's claim against Adams.

Morrison, however, argues that even after his formal dismissal as trustee, Adams continued to be a de facto trustee and continued to advise the Trust from a fiduciary position. Therefore, she claims that the continuous representation rule should apply to him also, or at the very least, there is a fact question as to when his fiduciary activities ceased.

Kansas has so far only recognized the continuous representation rule in legal malpractice actions. Other states, however, have adopted the rule for other types of professional malpractice. See *Northern Mont. Hosp. v. Knight*, 248 Mont. 310, 811 P.2d 1276 (1991) (applying continuous representation rule to architects). In *Lincoln Grain v. Coopers & Lybrand*, 215 Neb. 289, 294-96, 338 N.W.2d 594 (1983), the court addressed the question of whether the rule applies to accountants but did not decide the question because it determined that, under the facts of the case, application of the rule would not affect the outcome.

Arguably, it would be reasonable to apply the continuous representation rule to those situations in which the professional owes a fiduciary duty to the client. The client should not be expected

to supervise every action of his or her fiduciary, and the fiduciary should have the chance to correct mistakes or mitigate damages. Morrison does not complain that Adams committed professional malpractice in his duties as an accountant, but rather that he continued to operate as a de facto trustee even after he had been terminated from his trustee position.

There are two types of fiduciary relationships, those created by contract and those implied by law from the surrounding facts and the relationship of the parties. *Daniels v. Army National Bank*, 249 Kan. 654, 656, 822 P.2d 39 (1991). Morrison contends that after the contractual fiduciary relationship ended, Adams was still a fiduciary due to the surrounding facts and the relationship between Morrison and Adams. Some indicia of a fiduciary relationship include the acting of one party for another, the exercising of influence by one party over another, the reposing of confidence by one party in another, the inequality of the parties, and the dependence of one party on another. *First Bank of WaKeeney v. Moden*, 235 Kan. 260, 262, 681 P.2d 11 (1984).

Construing the facts in the light most favorable to Morrison, we find that Adams continued to sit in on all trustee meetings, which were held in his office. He also received copies of correspondence relating to trust decisions. However, Morrison knew of no investments which he made for her, and there were no allegations that Adams acted on behalf of the Trust after his termination as trustee. There were also no allegations that Adams acted on Morrison's behalf or exercised influence over her or that she reposed any special confidence in him. Therefore, Adams is not as a matter of law an implied fiduciary, even construing the facts in the light most favorable to Morrison, and the district court did not err in holding that the statute of limitations had run as to his liability.

Morrison also argues that the district court erred in finding that K.S.A. 1993 Supp. 60-513(b) barred her claims for damages arising out of investments which were made more than 10 years prior to the filing of the case. Morrison contends that the continuous representation rule should toll the running of the 10-year time limit found in K.S.A. 1993 Supp. 60-513(b).

Under K.S.A. 1993 Supp. 60-513(b), causes of action for negligence shall not be deemed to have accrued until the act giving rise to the cause of action first causes substantial injury or, if the injury is not readily ascertainable, when it becomes ascertainable; but in no event shall an action be commenced more than 10 years beyond the act giving rise to the cause of action. The district court found that this 10-year provision provided an absolute bar to liability for investments made 10 years prior to the filing of this action.

Morrison asserts that the continuous representation rule tolls the statute of limitations. However, K.S.A. 1993 Supp. 60-513(b) establishes a statute of repose rather than a statute of limitations. See *Dobson v. Larkin Homes, Inc.*, 251 Kan. 50, 52, 832 P.2d 345 (1992). Statutes of repose are generally substantive and abolish a cause of action after a specific time period, even if the cause of action may not have accrued yet. *Harding v. K.C. Wall Products, Inc.*, 250 Kan. 655, 668, 831 P.2d 958 (1992). In *Harding*, the Kansas Supreme Court quoted *Menne v. Celotex Corp.*, 722 F. Supp. 662 (D. Kan. 1989), which stated that statutes of repose " 'generally lack tolling provisions.' " 250 Kan. at 662.

Because K.S.A. 1993 Supp. 60-513(b) is a statute of repose rather than a statute of limitations, the continuous representation rule does not toll the time for those complained-of actions which occurred more than 10 years before filing of the suit. The district court did not specify which of the actions of Watkins and Adams were specifically barred. However, at the very least, some of the oil and gas leases, most of the Flexweight transaction, the investment in the lot on South McKinley Street, and some of the Crossroads investment would be subject to the statute of repose. On remand, the district court should factually determine when the events giving rise to the complained-of causes of actions occurred for purposes of the statute of repose.

The district court alternatively found that even if the statute of limitations did not bar Morrison's claims, her refusal to discharge Watkins and Adams after being advised to do so by McFadyen constituted a waiver of any claims she may have had for their earlier conduct. The policy behind the continuous rep-

resentation rule is that a client does not have to discharge his or her attorney, even if the client is fully aware of the mistakes. See *Pittman*, 12 Kan. App. 2d at 608-09. Therefore, waiver would be inapplicable to situations where the continuous representation rule applies.

Watkins and Adams cross-appeal, contending that the district court erred in finding that they were not entitled to reimbursement from the Trust for all attorney fees and expenses incurred in defending this suit. Watkins and Adams first state that under K.S.A. 59-1717, which provides that a fiduciary may recover his necessary expenses incurred in the execution of the trust, they are entitled to their expenses in defending this action. They also cite the Restatement (Second) of Trusts § 244 (1935), and *Saulsbury v. Denton Nat'l Bank*, 25 Md. App. 669, 335 A.2d 199 (1975), which provide that trustees are entitled to reimbursement for all attorney fees and expenses even if they successfully defend the case other than on the merits.

We must first decide whether K.S.A. 59-1717 applies only when the expenses are incurred during the administration of the trust rather than after the trustees' dismissals. While Kansas has not addressed the issue of whether former trustees should be allowed their expenses for litigation that occurred as the result of their actions as trustees, at least one court has so ruled. See *Preston Corp. v. Reeves*, 762 F. Supp. 948 (N.D. Ga. 1991) (holding that a former trustee's defense of its actions as trustee are chargeable to the trust). A trustee should be able to recover expenses regardless of whether the trustee was sitting at the time the suit was instigated as long as the reason for the suit was an action which occurred while the trustee was a trustee. We therefore conclude that under K.S.A. 59-1717, a trustee is entitled to expenses necessarily incurred in successfully defending the trustee's actions as trustee even when those expenses are incurred after the trustee's termination as trustee.

The district court adopted Morrison's response to Watkins and Adams' motion for attorney fees as its rationale for denying the fees. Unfortunately, the district court did not make clear which of Morrison's arguments it adopted. The district court might have

denied compensation based on the fact that there was no statutory basis for Watkins and Adams' claim, as suggested by Morrison. However, as noted above, K.S.A. 59-1717 does provide such a statutory basis. A more likely basis for the district court's ruling is that it found that the litigation conferred no benefit to the trust as was also suggested by Morrison.

In *Burch v. Dodge*, 4 Kan. App. 2d 503, 510, 608 P.2d 1032 (1980), this court denied attorney fees to a trustee in connection with his appeal of a surcharge. The court reasoned that the appeal was of no benefit to the trust but arose from the trustee's admitted failure to carry out his duty. 4 Kan. App. 2d at 510. However, the case before us is distinguishable from *Burch* in that Watkins and Adams have not admitted nor been found guilty of any wrongdoing. They are the prevailing parties in this litigation, although no determination has been made as to the propriety of their actions.

The award of costs in K.S.A. 59-1717 is mandatory, conditioned upon the good faith of the trustee. *McClary v. Harbaugh*, 231 Kan. 564, 570, 646 P.2d 498 (1982). Therefore, absent any wrongdoing, the trustees should be reimbursed from the trust for their attorney fees. The district court may have decided that Watkins and Adams were guilty of bad faith in their dealings with the Trust; however, it is impossible to tell and cannot be presumed from the court's holding that the litigation did not benefit the Trust.

This issue is remanded to the district court for a determination of whether Watkins and Adams acted in good faith and should therefore be entitled to their attorney fees.

Watkins and Adams also assert that the district court erred in failing to award them expenses which they incurred after the termination of the Trust and prior to the commencement of litigation.

The district court implicitly found, in adopting Morrison's response to Watkins' and Adams' motions for attorney fees, that Watkins and Adams had failed to show that they were authorized to conduct their alleged services on behalf of the Trust or that their services they claimed to have performed were on behalf of

the Trust. This failure represents a negative finding of fact, as Watkins and Adams had the burden to prove that their services were authorized and conducted on behalf of the trust.

A negative finding indicates that the party upon whom the burden of proof was cast did not sustain the burden. *EF Hutton & Co. v. Heim*, 236 Kan. 603, 610, 694 P.2d 445 (1985). A negative finding will not be disturbed absent arbitrary disregard of undisputed evidence or some extrinsic consideration such as bias, passion, or prejudice. *Mohr v. State Bank of Stanley*, 244 Kan. 555, 567-68, 770 P.2d 466 (1989).

A review of the attachments offered by Watkins and Adams reveals that while the services for which they claim compensation were billed to the Trust, there is no evidence that the Trust authorized such work to be done. At the time Watkins and Adams claim to have performed these services, neither one of them was a fiduciary for the Trust. Therefore, it cannot be presumed that the work they did was done on behalf of the Trust. The district court did not err in refusing to award attorney fees for this work.

In his cross-appeal, Watkins also raises the issues of whether Morrison's claim is barred by estoppel, the doctrine of laches, or application of the prudent man rule. Adams also raises the issues of laches and estoppel in his appellee's brief. The problem with raising these issues at this juncture is that because of the district court's ruling on the statute of limitations, the district court did not reach these issues.

Also, as in the case of waiver, both estoppel and laches conflicts with the intent of the continuous representation rule, which encourages the client to work with the fiduciary in attempting to rectify the situation or to mitigate damages. Although Morrison knew of the investments and knew that some damage had occurred, she is not charged with the duty to fire the trustees or instigate proceedings against them immediately. Neither laches nor estoppel are particularly applicable in this case, and the district court did not err in failing to award summary judgment on this issue.

Watkins also argues that the district court erred in not finding that the prudent man rule entitled him to summary judgment for

any actions taken after October 1, 1987. He claims that the undisputed facts showed that he followed the prudent man rule and Morrison's written instructions after that point. Unfortunately, there appears to be a dispute about this fact in that the uncontroverted facts do not show whether Watkins complied with the prudent man rule after 1987. Watkins offers no evidence to support this assertion, and Morrison does not come forward with any evidence that Watkins breached the prudent man rule. Therefore the district court did not err in failing to award summary judgment on this issue.

The district court's award of summary judgment to Adams is affirmed, the award of summary judgment to Watkins is reversed, and this matter is remanded for further proceedings with directions for the court to determine which investments made by Watkins are subject to summary judgment based on the statute of repose.

On the cross-appeal, the district court's refusal to award attorney fees to Watkins and Adams in connection with this litigation is reversed and the case is remanded so that the district court can consider the question of good faith. The district court's refusal to award expenses arising after the firing of Watkins and Adams but before this litigation commenced is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings.