(980 P.2d 1032)

No. 80,820

MYRA LYNN GANSERT, *Appellant*, and DONALD M. GANSERT, V. MARK A. CORDER, *et al.*, *Appellees*.

Opinion filed May 14, 1999.

*Aften P. McKinney* and *Arthur A. Benson II*, of Benson & Associates, of Kansas City, Missouri, for appellant.

*Debra A. Vermillion*, of Wallace, Saunders, Austin, Brown and Enochs, Chartered, of Overland Park, for appellees.

Before GERNON, P.J., KNUDSON, J., and DAVID F. BREWSTER, District Judge, assigned.

KNUDSON, J.: Myra Lynn Gansert appeals the district court's order of summary judgment entered in favor of Mark A. Corder. The issue on appeal is whether the district court erred in concluding that Myra and Donald Ganserts' legal malpractice action was barred by the statute of limitations.

Gansert and her husband, Donald, retained Corder to be their attorney on claims arising out of a settlement agreement between themselves and the general contractor who built their home. Subsequently, an arbitration award in favor of the Ganserts was confirmed in the district court and then appealed to the Kansas Court of Appeals where the award, except for an allowance of attorney fees, was affirmed on March 17, 1995.

On April 20, 1995, Gansert met with one of Corder's former law partners, Eugene Hackler. In a memorandum of the meeting later sent to Corder, Hackler noted Gansert made several complaints about the quality of Corder's representation. She also told Hackler that she had employed another attorney to represent her.

On April 24, 1995, Gansert met with Corder and demanded that he waive all legal fees and expenses, threatened to file an ethical complaint with the Disciplinary Administrator, and fired him.

The next day, Corder recapped his conversation with Gansert in a letter to her stating that once he had received the check for judgment, disbursed the funds from his trust account, and completed a satisfaction of judgment, he would withdraw from the case. Corder's letter concluded: "In any event, I will no longer have any responsibility for the handling of any matters beyond obtaining satisfaction of the judgment and withdrawing from the case."

Gansert immediately responded by letter to Corder stating: "I told you Monday that you were no longer representing me on this case," and "You are not to obtain a check from Ronald Reuter. It is to be paid to the Court. I am requesting a hearing from Judge McClain regarding your fees." Gansert also wrote to Judge McClain explaining that she had fired Corder, the judgment would be paid into court, and she was requesting a hearing to dispute Corder's lien for attorney fees.

On May 1, 1995, Corder filed a motion in the district court for payment of judgment, a motion for enforcement of his attorney's lien, and a motion to withdraw as counsel for the Ganserts. At the hearing on May 16, 1995, Gansert indicated she was appearing to contest Corder's attorney fees. Corder announced he was appearing on behalf of the Ganserts and stated,

"I filed a motion in this case to enforce my attorney's lien and to realize upon the bond that was filed in this case. . . . And I don't know if Miss [sic] Gansert has agreed to the dollar amount that I calculated as the correct amount or not. I think she may need to speak with her—for herself in that regard. But once that's done, and either paid into Court or paid out, however the Court directs, I've requested that I be permitted to withdraw as counsel for the plaintiffs in this case and to realize upon my attorney's lien for fees and expenses that have been paid in this case."

At the conclusion of the May 16 hearing, the district court granted Corder's motion to formally withdraw as attorney of record.

Pursuant to a written tolling agreement signed by the Ganserts on May 15, 1997, and by Corder and a representative of his former law firm on May 19 and 20, 1997, the parties agreed to extend the 2-year statute of limitations applicable to legal malpractice from May 15, 1997, to August 15, 1997, as to any claims in existence on May 15, 1997.

On August 12, 1997, the Ganserts filed this legal malpractice case against Corder, his present law firm, and his former law firm, alleging negligent conduct between June 1992 and May 1994. Eventually, all of the defendants filed a motion for summary judgment alleging that the Ganserts' claims were barred by the statute of limitations because Corder had "performed no legal services on behalf of the Ganserts, never acted on the Ganserts' behalf, nor advised the Ganserts after April 27, 1995." The Ganserts responded that because Corder continued to represent them until May 16, 1995, the continuous representation rule applied; thus, their lawsuit was filed within the 2-year statute of limitations as extended by 90 days under the written tolling agreement. The district court concluded that under the uncontroverted facts the continuous representation rule did not toll the statute of limitations and granted summary judgment to the defendants. Myra Lynn Gansert appeals the grant of summary judgment in favor of Corder.

When a statute of limitations begins to run is a question of law over which this court has unlimited review. *Brown v. State*, 261 Kan. 6, 8, 927 P.2d 938 (1996).

In *Pancake House, Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (1986), the Kansas Supreme Court set out the main theories used to determine when a cause of action accrues in an attorney malpractice case:

"Depending upon the facts and circumstances of each case, there are at least four theories which can apply to attorney malpractice in Kansas as to when the accrual of a cause of action occurs and the statute of limitations begins to run. These include:

(1) The occurrence rule—the statute begins to run at the occurrence of the lawyer's negligent act or omission.

(2) The damage rule—the client does not accrue a cause of action for malpractice until he suffers appreciable harm or actual damage as a consequence of his lawyer's conduct.

(3) The discovery rule—the statute does not begin to run until the client discovers, or reasonably should have discovered, the material facts essential to his cause of action against the attorney.

(4) The continuous representation rule—the client's cause of action does not accrue until the attorney-client relationship is terminated."

Both parties seem to agree that the Ganserts' cause of action accrued from the point at which the attorney-client relationship was terminated. However, resolution of this case turns upon when such termination actually occurred.

In *Morrison v. Watkins*, 20 Kan. App. 2d 411, 417, 889 P.2d 140, *rev. denied* 257 Kan. 1092 (1995), this court discussed at length the policy behind the continuous representation rule and its application:

" ' "The premise of the continuous representation rule is to avoid unnecessarily disrupting the attorney-client relationship. Adoption of this rule was a direct reaction to the absurd requirement of the occurrence rule which requires the client to sue his attorney even though the relationship continues and there has not been and may never be any damage. The rule, limited to the context of continuous representation, is consistent with the purpose of the statute of limitations which is to prevent stale claims and enable the defendant to preserve evidence. Where the attorney continues to represent the client in the subject matter in which the error has occurred, all such objectives are achieved and preserved. The attorney-client relationship is maintained and speculative malpractice litigation is avoided.

" ' "The rule of continuous representation is equally available and appropriate in those jurisdictions adopting the damage and discovery rules. The policy reasons are as compelling for permitting an attorney to continue his efforts to remedy a bad result, even if some damages have occurred and even if the client is fully aware of the attorney's error. The doctrine is fair to all parties concerned. The attorney has the opportunity to remedy, avoid or establish that there was no error or attempt to mitigate the damages. The client is not forced to terminate this relationship, although the option exists. This result is consistent with any expressed policy basis for the statute of limitations." ' [*Pittman v. McDowell, Rice & Smith, Chtd.*, 12 Kan. App. 2d 603, 608-09, 752 P.2d 711, *rev denied* 243 Kan. 780 (1988)]."

On appeal, Gansert argues that Corder continued to represent her until May 16, 1995, regardless of the fact that she no longer

considered him to be her attorney after April 24, 1995. Corder, on the other hand, argues that his representation ended on April 24, 1995, despite the fact that he continued to be the Ganserts' attorney of record until the order approving his withdrawal as counsel.

In its order granting summary judgment, the district court noted that after April 24, 1995, Corder's actions were limited to the filing of the motion for payment of the judgment, enforcement of his attorney's lien, and formal withdrawal as the Ganserts' attorney. The court stated: "From a functional analysis, Corder did not continue in the case after April 24 to advance the interests of the plaintiffs." The district court also found that the Ganserts "no longer looked to or considered Corder to be their attorney after April 24, 1995." Based upon these two findings, the district court concluded the continuing representation doctrine did not apply after April 24, 1995. We agree. Gansert through her actions and statements made clear that she terminated Corder's representation on April 24, 1995, and from that point forward their relationship was adversarial.

In *Morrison*, this court discussed the application of the continuous representation rule. In that case, the plaintiff's attorney was appointed trustee for plaintiff's revocable trust. Due to a series of questionable investments made by the attorney as her trustee, plaintiff eventually sued him. However, at one point, the plaintiff actually hired another attorney to review the defendant's conduct regarding the trust but ultimately chose not to fire the defendant despite the fact that defendant's wrongdoing had been revealed. This court held that because plaintiff never actually assumed an adversarial stance towards the defendant until she in fact revoked the trust and fired the defendant, the continuing representation rule tolled the statute of limitations. 20 Kan. App. 2d at 420.

The *Morrison* panel of this court cited *Cantu v. St. Paul Cos.*, 401 Mass 53, 58, 514 N.E.2d 666 (1987), for the proposition that: "Where the client does hire another attorney, and assumes an adversarial stance to her first attorney, the continuous representation terminates, even if the client does not formally fire the first attorney." 20 Kan. App. 2d at 420. In addition, this court cited *Lazzaro v. Kelly*, 87 App. Div. 2d 975, 976, 450 N.Y.S.2d 102 (1982), stating

the *Lazzaro* court held that "the continuous representation rule did not apply *because the trust and confidence on which the rule is based had come to an end, notwithstanding the fact that the first attorney continued to work for the plaintiff* as an escrow agent." (Emphasis added.) 20 Kan. App. 2d at 419. See also *Clark v. Jacobson*, 202 App. Div. 2d 466, 609 N.Y.S.2d 46 (1994); *Santulli v. Englert, Reilly*, 164 App. Div. 2d 149, 150-51, 563 N.Y.S.2d 548 (1990); *Pittelli v. Schulman*, 128 App. Div. 2d 600, 601, 512 N.Y.S.2d 860 (1987); Annot., 32 A.L.R.4th 260, 312.

On April 24, 1995, Gansert unequivocally told Corder he was no longer her attorney, that she intended to file a complaint with the Disciplinary Administrator, and that she would file suit against him, if necessary. We conclude application of the continuing representation rule ceased as of April 24, 1995, making that the date upon which the Ganserts' cause of action against Corder began to accrue. As the court stated in *Pancake House*: "The true test to determine when an action accrues is that point in time at which the plaintiff could first have filed and prosecuted his action to a successful conclusion." 239 Kan. at 87. In this case, although the shell of a relationship between the Ganserts and Corder continued until Corder was formally granted leave to withdraw by the district court on May 16, 1995, all of the evidence necessary for the Ganserts to prosecute a claim for attorney malpractice against Corder accrued when there was a de facto termination of the attorney-client relationship on April 24, 1995.

We conclude the district court did not err in granting summary judgment, because the statute of limitations bars recovery.

Affirmed.