Samantha G. O'KEEFE; Patrick H. O'Keefe; Anthony M. O'Keefe; Jennifer D. Bryan; Patrick H. O'Keefe; et al., Plaintiffs,

v.

Robert W. DARNELL; Davis, Persson, Smith & Darnell, also known as Turffs, Persson, Smith & Darnell, also known as Hankin, Persson, Davis, & Darnell, also known as Hankin, Persson, Davis, McClenathen & Darnell; David P. Persson, Kevin P. Smith, Barbara B. Levin, Barry R. Lewis, Jr., Robert G. Turffs, David D. Davis, Lawrence M. Hankin, and Andrew H. Cohen, Defendants.

No. 8:01–CV–722–T–17TGW.

United States District Court, M.D. Florida, Tampa Division.

Feb. 19, 2002.

John Jay Waskom, Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, FL, Kenneth J. Catanzarite, Anaheim, CA, for plaintiffs.

William Penn Dawson, II, Macfarlane, Ferguson & McMullen, Tampa, FL, for defendants.

### ORDER ON MOTION TO DISMISS

KOVACHEVICH, District Judge.

This cause comes before the Court on the Defendant Robert W. Darnell, et al's Motion to Dismiss or for Judgment on the Pleadings, Counts I—VI as the statute of limitations bars all counts; a Motion to Dismiss Counts I—VI for lack of standing regarding claims of negligence, breach of fiduciary duty, constructive fraud, intentional interference with expectancy of inheritance; and Motion to Strike Counts II and III (punitive damages), V (vicarious liability), and VI (negligent failure to train and supervise). (Docket No. 23). Plaintiffs filed a responsive motion thereto. (Docket No. 31).

### STANDARD OF REVIEW

The Defendants have requested dismissal on several of the claims. A Motion to

Dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint to determine whether it sets forth sufficient allegations to establish a claim for relief. A district court should not dismiss a complaint for failure to state a claim solely on the pleadings "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which could entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Additionally, when deciding a motion to dismiss, a court is required to view the complaint in the light most favorable to the plaintiff and accept the truthfulness of well-pleaded facts. See *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975); See also *Beck v. Deloitte et al.*, 144 F.3d 732, 735–36 (11th Cir.1998) (quoting *St. Joseph's Hosp., Inc. v. Hospital Corp. of America*, 795 F.2d 948 (11th Cir.1986)).

Alternatively, the Defendants request a judgment on the pleadings under Federal Rule of Civil Procedure 12(c). The Rule states, in part, "after the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." In viewing the pleadings "in the light most favorable to the nonmovant" the court "may grant the motion only if it appears beyond a doubt that the nonmovant can prove no set of facts in support of his claim which would entitle him to relief, or if material facts are undisputed and judgment on the merits is possible by merely considering the contents of the pleadings." See *Dickinson v. Executive Business Group, Inc.*, 983 F.Supp. 1395, 1396 (1997) (citing *Hallberg v. Pasco County, Fla.*, 1996 WL 153673 (M.D.Fla.1996)).

A Motion to Strike under Rule 12(f) of the Federal Rules of Civil Procedure allows the court, on its own initiate or motion, to order stricken from any pleading any "redundant, immaterial, impertinent, or scandalous matter." The motion "will 'usually' be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties." See *Gainer v. City of Winter Haven, Fla.*, 134 F.Supp.2d 1295, 1297 (2000) (citing *Seibel v. Society Lease Inc.*, 969 F.Supp. 713, 715 (M.D.Fla.1997)).

## BACKGROUND

The following "facts" are taken as true for the purpose of the pending motions. The Plaintiffs, heirs and conservator of Dolores W. O'Keefe, allege that the Defendants, Davis Pearson, and specifically Robert W. Darnell, committed legal malpractice in the administration of the Dolores W. O'Keefe Living Trust 1990 [Dolores Trust I], the Michael O'Keefe sub-trust of the Dolores W. O'Keefe Living Trust [Michael Trust I], as well as Michael Trust II, the sub-trust of the Dolores W. O'Keefe Irrevocable Trust of 1996. In 1990, Dolores W. O'Keefe created a trust, a pour-over will to the trust, and a durable power of attorney naming Anthony D. O'Keefe as power holder. Dolores W. O'Keefe established an annual gifting practice of providing $10,000 "federal exclusion gifts" inter vivos to each of her children Michael O'Keefe, Anthony D. O'Keefe, and Patricia O'Keefe and to trusts for each of her grandchildren, including: Plaintiffs Samantha, Patrick, Anthony, Jennifer, and Molly. The Plaintiffs allege that the 1990 will, the 1990 trust, and this annual giving practice established Dolores' testamentary intent to "retain control of her assets until her death."

The Plaintiffs also claim that a provision of the Dolores I Trust required that upon her death, the estate was to be divided into three parts for disbursement to each of her children. The Plaintiffs claim the Dolores I Trust provided that if any of her children predeceased her, that child's

share "would pass outright to the deceased child's living issue." Dolores W. O'Keefe became incapacitated in 1990. John A. Taylor was court appointed as Dolores' conservator in 1995. The Plaintiffs claim that Anthony D. O'Keefe, who was acting as Dolores' attorney-in-fact, hired Robert Darnell, who then entered into an attorney/client relationship with Dolores' conservatorship in mid–1995 to "provide estate planning services for Dolores." Plaintiffs further allege that Darnell and Anthony O'Keefe worked together, Darnell in conflict with his fiduciary duty to Dolores, to create a "gifting strategy." This gifting strategy allowed Dolores' conservator (Taylor) to transfer 335,000 shares of Albertson's stock (of which Dolores owned 1,760,000 shares) to three sub-trusts: on each for Michael, Anthony D. and Patricia. Taylor then transferred the balance of Dolores' assets to the 1990 Dolores I Trust, of which Anthony D. was the "sole trustee." (P.4) The Dolores I Trust was required to pay gift taxes of "at least" $7.3 Million on the stock gift transfer to the sub-trusts that in essence left Dolores "broke."

Plaintiffs Samantha, Patrick, Anthony, Jennifer, and Molly are the issue of Michael O'Keefe who was killed in an airplane crash on September 6, 1996. As a result of the gift transfer, Michael's 1996 Trust paid $7.5 million in estate taxes. Darnell became representative of the Michael O'Keefe estate on September 5, 1996. The Plaintiffs claim that Anthony D. O'Keefe forged an "unexecuted" will of Michael O'Keefe and sent the will to Darnell to probate. The Plaintiffs further claim that Darnell should have had the gift made to the Michael Trust from Dolores Trust I set aside "for mistake or lack of notice." As a result of Darnell's failure to set aside the gift, the Plaintiffs allege he caused damage "of not less than $14 Million," although he and his firm earned a $65,000.00 bonus on the gift transfer, a

bonus they would not have earned if the gift were set aside. Dolores O'Keefe died on January 9, 1999, while still under a conservatorship. The Plaintiffs claim that Darnell continued "post mortem estate planning" for Dolores through March and April 1999, while still acting as representative to the Michael Estate. Therefore, the Plaintiffs will proffer an expert who will testify that Robert Darnell, while acting within the course and scope of his employment as a principle or partner with Davis Persson, acted in adverse interest to his attorney/client relationship with Dolores, her estate, conservatorship, 1990 Dolores I Trust, and the 1996 Trust.

## DISCUSSION

Defendants have asserted several arguments supporting their Motions to Dismiss, Motion to Strike, and for a Judgment on the Pleadings. Each argument will be addressed separately.

### Abstention

■ The Defendants argue that this Court should abstain from deciding this case because the Plaintiffs filed a state court action in Kansas on December 8, 2000. Plaintiffs admit that this specific cause of action was a "prophylactic measure," filed to preserve a federal diversity action against the statute of limitations should the Kansas court grant a motion for summary judgment on the state action. In deciding federal grounds required for a district court to abstain from a cause of action, the Supreme Court in *Colorado River Water Conservation District v. U.S.*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976), defined three categories of claims for which the doctrine of abstention was appropriate. The Court commented that "it was never a doctrine of equity that a federal court should exercise its judicial discretion to dismiss a suit

merely because a State court could entertain it." *Id.* at 814, 96 S.Ct. 1236. The Court proclaimed abstention appropriate: (1) "in cases presenting a federal issue which might be mooted or presented in a different posture by a state court determination of pertinent state law," (2) "where there have been presented difficult questions of state law bearing on policy problems of substantial public import whose importance transcends" this single action, and (3) "absent bad faith, harassment, or a patently invalid state statute, federal jurisdiction has been invoked for the purpose of restraining state criminal proceedings," or a nuisance or tax proceeding. *Id.* at 816, 96 S.Ct. 1236.

The case at bar obviously does not present a federal issue nor does it in anyway restrain a criminal or nuisance proceeding. Under the second category concerning questions of state law bearing on state public policy, the Supreme Court reasoned that abstention was proper in a case where federal review "would be disruptive of state efforts to establish coherent policy with respect to a matter of substantial public concern." *Id.* at 814, 96 S.Ct. 1236. The Plaintiffs defend that they are not "seeking resolution of ... overriding state policy." This Court could examine whether allowing a claim of Interference with Expected Inheritance could be "disruptive of state efforts" when Kansas precedent is unresolved. Whether the tort claim is a "substantial public concern" could be argued by the parties. The Defendants, however, have not spoken on this matter. Therefore, this Court accepts the Plaintiffs' claim that Kansas will "recognize" the tort in a separate civil action filed on the facts of this case and, as such, the Court is not compelled to abstain since "abstention is the exception, and not the rule." The motion to abstain is **denied**.

## Conflict of Laws

■ The Plaintiffs claim that Kansas substantive laws apply to this case under the "significant relationship" test for resolving conflicts of laws issues. This Court agrees.

The Florida Supreme Court adopted the "significant relationship" test, delineated in the Restatement (Second) of Conflict of Laws §§ 145–146, in *Bishop v. Florida Specialty Paint Co.*, 389 So.2d 999, 1001 (Fla.1980). The Court found the test controlling "in tort actions involving more than one state," and rejected any distinction between procedural and substantive issues. *Merkle v. Robinson*, 737 So.2d 540, 542 (Fla.1999).

The Plaintiffs correctly argue that the injury to the 1990 Dolores Trust occurred in Kansas; the conduct causing the injury to the Trust occurred in Kansas, as well as proving Kansas as the place where the relationship between the parties is centered even though the domicile, residence, nationality, place or incorporation and place of business of the parties is diverse. This diversity, however, does not defeat the significant relationship test since "these contacts are to be evaluated according to their relative importance with respect to the particular issue." *Bishop*, 389 So.2d at 1001. To this end, Plaintiffs argue Section six of the Restatement enumerating seven additional factors to be considered to overcome the diversity issue, especially the fact that Florida and Kansas have "virtually identical statute of limitations ... so Plaintiffs are not obtaining a limitations advantage." The Defendants do not present a specific argument that the conflict of laws should be resolved for either Kansas or Florida. This Court holds that the significant relationship test, along with other policy considerations, requires **Kansas** substantive law to be controlling in this cause of action.

### Statute of Limitations

Defendants argue that all Counts should be dismissed or a judgment on the pleadings granted as the present claim is barred by the statute of limitations under both Florida and Kansas law for legal malpractice actions. Because this Court has determined Kansas law as binding on this case, the Court will discuss only applicable Kansas law and precedent.

Kansas statute 60–513 provides for a two-year limitation for civil actions without specifically enumerating legal malpractice claims. However, 60–513(a)(4) provides for "an action for injury to the rights of another, not arising on contract, and not herein enumerated." Plaintiffs claim, and the Defendants do not disagree, that this provision applies to legal malpractice claims. Both parties also agree that *Pancake House Inc. v. Redmond*, 239 Kan. 83, 87, 716 P.2d 575 (Kan.1986), presents the four theories upon which a court may determine legal malpractice cause of action accrual: 1) occurrence rule; 2) damage rule; 3) discovery rule; and 4) continuous representation rule.

The Plaintiffs make two statute of limitations arguments: First, under the representative capacity of John Biscanin as the co-administrator of Dolores' estate; Second, for the heirs in their individual capacity. Each argument is considered separately.

■ The Plaintiffs first argue that the continuous representation rule should be applied to this cause of action "since a client's cause of action does not accrue until the attorney/client relationship is terminated." *Id.* at 87. Here, the Kansas Supreme Court held that facts and circumstances determine which theory will be applied to a legal malpractice cause of action. *Morrison v. Watkins*, 20 Kan. App.2d 411, 417, 889 P.2d 140 *rev. denied* 257 Kan. 1092 (1995), provides well-reasoned insight into the policy supporting the continuous relationship rule whereas, "[it] is consistent with the purpose of the statute of limitations which is to prevent stall claims and enable the defendant to preserve evidence." *Id.* at 417, 889 P.2d 140. *Peyton v. Chase County Nat. Bank*, 124 Kan. 763, 262 P. 595 (1928), held that "the statute of limitations does not begin to run until there are in being a person capable of suing and a different person capable of being sued." The Kansas Supreme Court recognized the folly of tolling the statute of limitations when a person representing an estate, who is partaking in misconduct, would raise a cause of action in the matter. *Id.* at 597.

■ In the present case, the Plaintiffs allege that Darnell traveled to Kansas to "provide advice and counsel" in post mortem estate planning for Dolores. Darnell and the firm provided services, in a continuous representation role to Dolores, until April 28, 1999. The Plaintiffs filed this cause of action April 1, 2001, with the two-year statute of limitations provided by Kansas statute 60–513. The Plaintiffs further support that the statute of limitations does not bar this cause of action because John Biscanin was not named as a successor conservator for Dolores until August 8, 2000 and trustee of the 1990 Trust and 1996 Sub–Trust until September 11, 2000. Biscanin was the person capable of suing on behalf of Dolores because the Plaintiffs allege the court-appointed conservator, John Taylor, was assisting the Defendants with the gifting misconduct. Therefore, under this argument, Biscanin could have filed this cause of action on behalf of Dolores at any time prior to August 8, 2002. As to their individual capacities, the heirs rely on the discovery rule, in that they did not discover Darnell and the firms actions until June 1999, when they received discovery in Kansas case number 98–C–8568. Defendants claim that paragraph 21 of the complaint alleges that the Plaintiff discov-

ered Darnell's services in "approximately March 1999," causing this cause of action to be barred by the statute of limitations. However, Plaintiffs have properly pled "concealment" of Darnell's involvement with the post mortem estate planning activities through "at least" April 1999, as revealed through the discovery documents in the Kansas case. Defendants argue that this cause of action should be dismissed or treated as a judgment on the pleadings because this cause of action is barred by the statute of limitations under all four Kansas statute of limitation rules. In citing *Pancake House,* the Defendants argue that the damage, occurrence, and discovery rules all apply to March 1999 under which the statute of limitations would bar this cause of action. Defendants have not, however, argued the continuous representation rule and claimed that the Plaintiffs acknowledged the attorney/client relationship ended in March 1999. The Defendants do not provide a specific citation as to where the Plaintiffs make this acknowledgment.

As such, this Court accepts the Plaintiffs argument under *Peyton* for the co-administrator in his representative capacity and the discovery rule for the heirs as individuals that the statute of limitations does not bar this cause of action. The Defendants' Motion to Dismiss and Judgment on the Pleadings is **denied.**

### Standing

Defendants argue Counts I, II, and III should be dismissed under Rule 12(b)(6) for lack of standing, "simply out of an abundance of caution."

■ As to Count I (negligence), the Defendants argue that only those persons "in privity" with an attorney has standing or "the right to bring a malpractice action." Defendants' arguments focus primarily on Florida precedent decided on privity within the context of wills and testamentary intent. Specifically, the Defendants argue a lack of standing "the Plaintiffs, and especially their heirs" can allege that Darnell made a "mistake" in a will. The Defendants' reliance on a "mistake" requirement is misplaced. The Plaintiff *heirs* rely on *Pizel v. Zuspann,* 247 Kan. 54, 795 P.2d 42 (1990), to establish "beyond-privity" test factors to support standing in a cause of action involving an attorney and the intended beneficiaries of a trust. Plaintiff heirs correctly state that the Kansas Supreme Court has imposed a duty of "due care" on an attorney performing services for a client, to an intended beneficiary of the services, as a matter of public policy. *Id.* at 66. The *Pizel* court held that intended beneficiaries were no longer barred by contractual privity and could sue an attorney for legal malpractice under this duty of due care. The Plaintiff heirs in the case at bar were the intended beneficiaries of the Dolores Trust and estate plan, and, as such, have standing to pursue the Count I claim.

■ As to Count II (breach of fiduciary duty) and Count III (constructive fraud), the Plaintiffs correctly remind the Defendants that it is only John P. Biscanin who is suing under these claims. The Plaintiffs correctly rely on *Matter of Murdock,* 220 Kan. 459, 467, 553 P.2d 876 (1976) as providing Biscanin, as the co-administrator/trustee of the 1990 Trust, 1996 Trust, and 1996 Sub–Trust, with the authority to "assert a claim on behalf of the trusts." Biscanin, therefore, has the authority and standing to claim negligence, breach of fiduciary duty, and constructive fraud, against the defendants on behalf of the Dolores estate and trusts. The defendants' Motion to Dismiss Counts I, II, and III for lack of standing is **denied.**

### Rule 12(b)(6): Failure to State a Claim

Defendants request Counts I (negligence), II (breach of fiduciary duty), III

(constructive fraud), and IV(interference with expected inheritance) be dismissed for failure to state a claim under Rule 12(b)(6). The Court has previously found the Plaintiffs, as heirs and the co-administrator/trustee, have sufficient standing to pursue the cited claims. Here, Defendants argue the Plaintiffs "have failed to plead facts necessary to maintain such causes of actions." The Court will review each claim individually.

### Negligence: Heirs

█ The Defendants and Darnell claim to have no duty to the heir Plaintiffs. This issue was resolved by the determination that the heirs have standing to sue under the beyond privity test. The Plaintiff heirs claim that Darnell breached his duty to them as the intended beneficiaries of the Dolores pour-over will and estate plan by not setting aside the inter vivos gift from the Dolores 1990 Trust to her three children. This gift transfer was adverse to the Plaintiffs as heirs of Michael O'Keefe. Darnell consulted, counseled, and recommended actions to Anthony D. and Patricia O'Keefe adverse to the heir's interests and in conflict with Dolores' estate and gifting plans. The Plaintiffs allege that these actions proximately caused the Michael I Estate to suffer a $7.5 Million estate tax, the estate to which the Plaintiffs were heirs. Defendants reiterate that neither Darnell nor the firm owed a duty to the heirs and that the proper defendants should be Anthony D. O'Keefe, Michael O'Keefe estate, and John Taylor, Dolores' "authorized agents."

The heirs have presented the necessary facts to establish a claim for negligence and, therefore, the Defendants' Motion to Dismiss the negligence claim under Rule 12(b)(6) is **denied**.

### Breach of Fiduciary Duty

█ The Defendants argue that neither Darnell nor the firm owed a fiduciary duty to the Plaintiffs. In relying on *Vignes v. Weiskopf,* 42 So.2d 84 (Fla.1949), the Defendants claim that an attorney is under no duty to determine a testator's capacity. However, the capacity of Dolores O'Keefe is not the issue on this claim. Instead, John P. Biscanin is suing on behalf of the Dolores 1990 Trust, 1996 Trust, and 1996 Sub–Trust alleging that Darnell, as the attorney for Dolores, had a duty "to act with the utmost honesty, impartiality, good faith and fair dealing." He further alleges that Darnell breached this duty when he acted in self interest in "misappropriating" Dolores' assets in establishing the gift transfer, and such, caused damage to Dolores' estate.

█ In reliance on *Denison State Bank v. Madeira,* 230 Kan. 684, 640 P.2d 1235 (1982), the Defendants also argue that the Plaintiffs fail to meet the "confidence" element, "manifest in all [breach of fiduciary relationship] decisions." While the Defendants do not make any specific references to *Denison,* this Court will clarify the standard by which a breach of fiduciary duty is established. The *Denison* facts are not similar to the case at bar. However, the Kansas Supreme Court held that "while no precise definition may be given ... there are certain broad general principles which should be considered." The Kansas Supreme Court uses "[a] position of peculiar confidence placed by one individual in another" as a "general principle" to be considered in determining the existence of a fiduciary relationship. The Defendants claim the Plaintiffs may only claim a confidence in Anthony D. O'Keefe or Taylor, Dolores' first conservator. Plaintiff, Biscanin argues that he can claim this "confidence" to Darnell as an agent for Dolores' This Court agrees. A confidence is one broad general principle that may be used to establish a fiduciary relationship. This

is not an "element" necessary to prove a breach. Darnell had a fiduciary duty to Dolores O'Keefe under the attorney/client relationship. Therefore, the Plaintiff Biscanin, as co-administrator of the Dolores estate and Trusts, has pled the facts necessary to support a breach of this fiduciary duty. The Defendants' Motion to Dismiss the breach of fiduciary duty claim under Rule 12(b)(6) is **denied**.

### Constructive Fraud

■ The Defendants argue that the plaintiffs claim is fatally flawed because of a lack of "reliance" as a "necessary element to a 'Constructive Fraud' claim" citing *Robson v. Leedy* (*Robson Link v. Leedy Wheeler*), 154 Fla. 596, 18 S.2d 523 (1944). This case, however, is not on point (case centered on misrepresentation in a contract for securities) nor binding because Kansas substantive law is applicable. Although not cited by either party, the Kansas Supreme Court held in *Moore v. State Bank of Burden*, 240 Kan. 382, 729 P.2d 1205, (1986) that constructive fraud is "a breach of legal or equitable duty which, irrespective of moral guilt, declares fraudulent because of its tendency to deceive others or violate a confidence, and neither actual dishonesty nor purpose nor intent to deceive is necessary." Although Plaintiff Biscanin alleges intentional acts by Darnell and the Defendants, the complaint presents sufficient "facts" that Darnell's "breach of legal or equitable duty" tended allegedly "to deceive" the heirs through Anthony D. O'Keefe and "violate a confidence" of the Dolores Trusts and estate plan. The Plaintiffs have sufficiently pled facts necessary to state a claim and, as such, the Defendants' Motion to Dismiss the constructive fraud claim under Rule 12(b)(6) is **denied**.

### Interference with Expected Inheritance

■ The Defendants argue that neither Florida nor Kansas law recognizes the tort claim of interference with expected inheritance. The Defendants also present the argument that "the only way under Kansas law for the Plaintiffs to claim inheritance interference is to contest the devise ... [and] to seek relief in probate court." Plaintiffs counter, however, that Kansas will "recognize" the tort of interference with expected inheritance in a related civil suit, *Samantha G. O'Keefe v. Robert L. Grover, et al.* (Case No. 00–CV–03456 on these specific facts). The Plaintiffs established the elements for interference with an expected inheritance as found in Restatement (Second) of Torts, § 774B and *DeWitt v. Duce*, 408 So.2d 216, 218 (Fla.1981). The Defendants argue that *Maxwell v. Southwest National Bank*, 593 F.Supp. 250, 253 (D.Kan.1984), bars this claim. This case does not support this contention. In *Maxwell*, the heirs contested the adequacy of a will. The Plaintiffs here argue the interference by Darnell and the Defendants in creating a gift transfer that caused the heirs "a loss of their inheritance." The Plaintiffs have sufficiently pled facts necessary to state a claim, and as such, the Defendants' Motion to Dismiss the interference with expected inheritance claim under Rule 12(b)(6) is **denied**.

### Punitive Damages and the Erie Doctrine

■ Defendants request the Court to dismiss or strike the punitive damages claims in Count II and III. The Defendants claim that punitive damages cannot be pled in this action as it would conflict with the Erie Doctrine. However, In *Cohen v. Office Depot*, the Eleventh Circuit Court of Appeals held that because Florida Statute § 768.72 conflicted with Federal Rule of Civil Procedure 8(a)(3), the rule would apply with respect to setting out claims for punitive damages in a pleading. The requirements for pleading as delineated in Florida Statute § 768.732 are there-

fore, not applicable in federal diversity cases. *Id.* at 1299. This specific holding in *Cohen* has not been reversed. Therefore, the Defendants' Motion to dismiss or strike the punitive damages claims is **denied**.

*Individual Attorney Liability (Vicarious Liability and Negligent Failure to Train and Supervise)*

Finally, the Defendants request the Court to dismiss or strike Count V (vicarious liability) and VI (negligent failure to train and supervise) arguing that the Plaintiffs have no legal basis upon which to sue the Defendant attorneys individually. On this argument, the Motion to Strike is **denied** since it is not of a "redundant, immaterial, impertinent, or scandalous matter" nor will the claim "cause prejudice to one of the parties" since the allegations do have a "possible relation to the controversy."

As to the Defendants' Motion to Dismiss, the Plaintiffs claim that "discovery is necessary to determine whether this professional association of lawyers was properly formed and whether all applicable corporate formalities are actually observed." The Defendants, however, counter that the Plaintiffs cannot sue the individual attorneys since the individual attorneys are not involved in the partnership. The Defendants argue that they can only be sued in their corporate status as a professional association under Florida Statute § 621.01. The Defendants, for the purpose of this motion, "will concede that it is, indeed, a partnership ... of professional associations." This Court agrees. Although the Plaintiffs correctly state that "the corporate construct does not automatically shield the attorneys from individual liability," Florida Statute § 621.07 provides that an attorney, as a "officer, agent, member, manager, or employee of a corporation or limited liability company

... shall be personally liable and accountable only for negligent or wrongful acts or misconduct committed by that person, or by any person under that person's direct supervision and control." The Plaintiffs have pled misconduct only on the part of Darnell and "at least David Davis." No other attorney is specifically named. The Defendants do not argue that the Plaintiffs failed to state a claim for the facts supporting Count V (vicarious liability ¶¶ 55–59), and Count VI (negligent failure to train and supervise ¶¶ 60–64).

It is **ORDERED** that the Motion to Dismiss (Docket No. 23), be **denied**, in part, and **granted** in part, in that the individual attorney defendants, David P. Persson, Kevin P. Smith, Barbara B. Levin, Barry R. Lewis, Jr., Robert G. Turffs, Lawrence M. Hankin, and Andrew H. Cohen, are dismissed with prejudice from this cause of action and the defendants **shall have** ten days from this date to answer the complaint. Furthermore, the Plaintiffs' Request for Judicial Notice (Docket No. 31) is **denied**.